**GOVERNMENT OF GUAM, Appellee**

v.

**LILLIAN FAYE PALEN, Appellant**

Criminal No. 27-A

District Court of Guam

Appellate Division

January 3, 1963

Counsel for Appellee: JAMES P. ALGER, *Deputy Island Attorney*
Counsel for Appellant: J. C. ARRIOLA

Before SHRIVER, *Judge*, District Court of Guam; KINNARE, *Judge*, High Court of the Trust Territory of the Pacific Islands and PEREZ, *Chief Judge*, Island Court of Guam

## PER CURIAM

### OPINION

The defendant was convicted in the court below of the offense of vagrancy as a common prostitute under Section 647(8) of the Penal Code of Guam, which provides:

Every common prostitute . . . is a vagrant and is punishable by a fine not exceeding $100, or by imprisonment not exceeding 6 months, or by both such fine and imprisonment.

In her appeal she contends that the evidence did not show that she was a common prostitute and that she was entrapped into committing the acts in question. As we agree that the conviction must be reversed for failure of the prosecution to show that she was a common prostitute within the meaning of the vagrancy statute, supra, we do not consider the question of entrapment.

This sordid story begins in early December, 1961. No evidence appears that the defendant at that time was other than a waitress employed at a club, where she was solicited by three Filipinos to have sexual relations with them for hire. Two of these subsequently testified at the trial and perjured themselves on two and possibly three material points (a) that they had not informed the police prior to the arrest of their appointment with the defendant; (b) that they had not been furnished with money by the police to pay to the defendant; and (c) that they had paid any money to the defendant. For the purpose of this opinion we rely upon police testimony.

The Filipinos were known to Sgt. Ignacio for about a year, but he had never used them previously in vice work. In the early part of December they reported to him that they had solicited the defendant, but she refused to go with them on two separate occasions a week apart. On the third occasion she agreed to have sexual relations for $20 each and gave them a phone number which subsequently led to an

appointment at her house the night of December 19. This appointment was reported to the police who gave two of them $20 bills after taking down the serial numbers. The police then proceeded to watch the house. The Filipinos arrived and the defendant asked them to wait until her landlord was off the premises. She then had sexual relations with one who testified he gave her $20 of his own money, and she was in the process of having sexual relations with the second one, who similarly testified, when the police entered, took photographs, made the arrest, searched for the money and found none. The defendant said she had been doing this for about two weeks and the Filipinos had given her no money.

We therefore have a situation where the defendant was not known to the police as a prostitute and there is no evidence of prostitution, except the acts on December 19, plus her statement that she had been doing this for about two weeks. Further, there appears to be no evidence that she accepted the solicitation of the Filipinos until she had refused such solicitation on at least two previous occasions. Her concern over the presence of her landlord further indicates that she was not running a house of prostitution.

Was she a common prostitute on December 19, 1961? The court below was at liberty to conclude that she had been paid by the Filipinos even though no money was found, but the statute does not refer to a prostitute but to a *common* prostitute. When the Penal Code of California was adopted in Guam, the construction placed upon its provisions by the courts of California were also adopted, *United States v. Johnson*, 181 F.2d 577.

It is only necessary to cite two late California cases to illustrate. While California cases subsequent to the adoption of the Penal Code of Guam are not controlling, they are persuasive especially when earlier cases are considered

in the later opinions. In *People v. Brandt*, 306 P.2d 1069 (1956), the prosecution witness had testified to an act of sexual intercourse with the defendant prostitute. After pointing out that vagrancy is not an act, but a condition, the court stated:

Turning now to the alleged insufficiency of the evidence. Since common prostitution is undoubtedly a way of life or status, as already pointed out, appellant could not properly be convicted under the vagrancy statute, unless, in addition to the proven act of intercourse, there were attendant circumstances constituting a basis for finding that the practice was habitual. The incriminating circumstances were indeed meager. From the transcript it would appear that there were two women in the private home which Trotter visited, namely Mrs. McPherson and the appellant. Trotter had sexual intercourse with one of them. Aside from this, there was no proof that "Tina" practiced prostitution as a business, or that the premises were regularly used for such purpose. Nor was evidence offered by which such facts could be inferred—the coming and going of men, the presence of paraphernalia, the bad reputation of the house . . . . The question here does not involve the undoubted right of the trial judge to weigh conflicting testimony. On the contrary, it is whether or not the appellant, by proof of one act of illicit intercourse in a house which may or may not have been a house of prostitution, can be convicted of vagrancy.

*People v. Daniel*, 1686 A.2d Supp. 788, 337 P.2d 247 (1959) involved the construction of the words "common drunkard." Cal. Penal Code 647, subd. 11; Guam Penal Code 647, subd. 9. The lower court had held this subdivision to be unconstitutional. The appellate court reversed and held that the words "common" and "drunkard" had well defined meanings. We quote, p. 798:

"The dictionaries are in substantial accord on the definitions, although some accord to the word 'drunk' or 'drunkard' alone a meaning which would make the word 'common' superfluous. Ballantine's Law Dictionary, second edition (1948), defines drunkenness as 'that state or condition which inevitably follows from taking excessive quantities of an intoxicant. It is synonymous with

inebriety and inebriation.' The same authority defines a 'common drunkard' as 'a person who drinks intoxicating liquor to excess with habitual frequency.' Words and Phrases defines a 'drunk' as 'a person who is under the influence of liquor to the extent that his passions are visibly excited, or his judgment is impaired by the liquor.' Webster's New International Dictionary, unabridged, second edition, defines a 'drunkard' as 'one who habitually drinks strong liquors immoderately, for example, a toper or a sot.' The same dictionary defines the word 'drunk' as 'under the influence of an intoxicant, especially an alcoholic liquor, so that the use of the faculties is materially impaired. Synonym—inebriate.' The same dictionary defines the word 'common' as 'habitual or notorious, as a common cold or a common thief'; also 'of frequent or ordinary occurrence.' The American College Dictionary defines the word 'common' as 'generally or publicly known,—notorious as a common cold; familiar, usual, as a common event.' It defines 'drunk' as 'a drunken person, intoxicated with or as with strong drink.' It defines a 'drunkard' as 'a person who is habitually or frequently drunk.' It states that the use of the word 'drunkard' connotes wilful indulgence to excess. The Oxford Universal Dictionary defines the word 'common' as 'generally known,' as for example, 'a common prostitute'; also as 'ordinary, prevalent, frequent, or commonly.' It also defines the word 'drunkard' as 'one addicted to drinking, especially to excess, as an inebriate, a sot.' That dictionary also states that these words have been in common use since the sixteenth century. It defines the word 'drunken' as 'intoxicated, or habitually intemperate,' and the word 'drunkenness' as 'the habit of drinking to excess.' We do not see how any person who can read and has access to a dictionary could possibly fail to understand the meaning of the words, 'common drunkard.' Their common use and the availability of the dictionary definitions furnish everybody with the means of knowing exactly what they mean. They are certainly sufficient to warn every person of the danger which he may incur if he persistently and habitually gets drunk."

As pointed out, supra, we do not consider the question of entrapment, nor do we consider whether private rights were violated, but we must note that this case has an unwelcome odor about it when the Filipinos originated the alleged prostitution and were rejected, reported to the po-

lice and were apparently encouraged to continue their solicitation until they succeeded. It is the business of the police to prevent, not encourage, prostitution. We conclude that the government failed to prove that the defendant was a common prostitute.

The case is reversed, with instructions to dismiss the information.